**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**ETHELBERT BROADNAX,**

**Plaintiff,**

**v.** **Case No. 3:15-cv-02460**

**UNITED STATES OF AMERICA,**
**HUNTINGTON, WEST VIRGINIA V.A.M.C.,**
**BECKLEY, WEST VIRGINIA V.A.M.C.,**
**WESTERN REGIONAL JAIL,**
**AMY RICHMOND,**
**EDDIE WILDS,**
**LARRY LARGE,**
**LISA Y. WEBSTER,**

**Defendants.**

# PROPOSED FINDINGS AND RECOMMENDATIONS

On March 3, 2015, Plaintiff Ethelbert Broadnax ("Broadnax") filed his *pro se* civil rights complaint alleging that he had been "attacked" by police officers at the Veteran's Administration Medical Center in Huntington, West Virginia, and after being arrested at the conclusion of the "attack," he was subjected to "additional suffering" at the Western Regional Jail due to the "negligen[ce]" of some employees there. (ECF No. 1 at 2). Broadnax subsequently filed an amended complaint either clarifying his existing claims or adding claims against other persons that he alleges were involved in the same series of events. (ECF No. 5 at 2-4). Pending before the Court is a Motion to Dismiss Amended Complaint filed by Defendants United States of America; Huntington, West Virginia

V.A.M.C. ("Huntington VAMC")[1]; Beckley, West Virginia V.A.M.C. ("Beckley VAMC"); Amy Richmond; Eddie Wilds; Larry Large; and Lisa Y. Webster (collectively, "Defendants").[2] (ECF No. 29). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Amended Complaint, (ECF No. 29), be **GRANTED**, and Broadnax's amended complaint, (ECF No. 5), be **DISMISSED, with prejudice**, *with the exception of Broadnax's claim against Defendant Wilds*, which should be **DISMISSED, *without prejudice.***

## I. Factual and Procedural History

On March 3, 2015, Broadnax filed a complaint alleging that Huntington VAMC police officers attacked him without provocation while he was at the medical center on April 4, 2014.[3] (ECF No. 1 at 2). Broadnax claims that he was then kidnapped by the officers and held at the Western Regional Jail ("WRJ") where "negligent employees there

[1] By referring to the "V.A.M.C." in his complaint and amended complaint, Broadnax presumably means the Veterans Administration Medical Center.

[2] The Western Regional Jail has not joined the Motion to Dismiss Amended Complaint and has not filed a response to the complaint. Service of the complaint was accepted by "J. Bledsoe" at the jail on May 26, 2015. (ECF No. 22).

[3] Broadnax has filed five other *pro se* lawsuits in this District. Three of those lawsuits have been dismissed for failure to prosecute. *See Broadnax v. Beckley V.A.M.C.*, No. 5:09-cv-00179, Dkt. No. 23 (Feb. 8, 2011); *Broadnax v. Shamsten*, No. 5:08-cv-01398, Dkt. No. 33 (Sept. 1, 2010); *Broadnax v. Bailey*, No. 5:09-cv-01090, Dkt. No. 21 (Sept. 1, 2010). A fourth lawsuit was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted. *Broadnax v. Helgoe*, No. 5:08-cv-01399, Dkt. Nos. 15 & 18 (Apr. 30, 2010 & Feb. 8, 2011, respectively). The fifth lawsuit was filed on March 26, 2015 against a West Virginia circuit court judge, a prosecuting attorney, the City of Beckley, the mayor of Beckley, the Beckley Police Department, and a Beckley police officer. *Broadnax v. Pugh*, No. 5:15-cv-03736, Dkt. No. 1. That case is currently pending before Judge Irene C. Berger and has been referred to Magistrate Judge R. Clarke VanDervort for the submission of a PF & R.

placed an intoxicated and violent inmate" in the same cell as Broadnax. (*Id.*) In support of his claims, Broadnax attached multiple documents to his complaint, including two criminal complaints related to the events on April 4, 2014 drafted by Huntington VAMC Police Officer Larry Large ("Large"), a police report created by Large concerning the same, and a warrant petition for an offender under supervision filed in this District indicating that Broadnax was on federal probation at the time of his interaction with the Huntington VAMC officers on April 4, 2014. (ECF No. 1-1 at 1-6).

In his report, Large indicates that he was informed that police assistance was requested in the Huntington VAMC room where Broadnax was located on April 4, 2014. (ECF No. 1-1 at 4). Patient Advocate Lisa Y. Webster ("Webster") requested the presence of police after attempting to explain to Broadnax that he was "flagged" in the computer system as banned from VA property. (*Id.*) At some point after Large arrived, two additional Huntington VAMC officers arrived, including Captain Eddie Wilds ("Wilds"). (*Id.*) Broadnax insisted that he was only banned from the Beckley VAMC, but Webster informed him that she needed to call the Beckley VAMC to verify Broadnax's assertion. (*Id.*) Broadnax then protested that he was being mistreated, and Wilds replied that everyone was trying to "clear up the flag," so that Broadnax could receive treatment at the Huntington VAMC. (*Id.*) Wilds also informed Broadnax that he was not being detained and that he was free to leave the property. (*Id.*) Broadnax began to leave, but first allowed Wilds to search the bag he was carrying after admitting to Wilds that he had been convicted of possessing a weapon at the Beckley VAMC. (*Id.*) The search proved unfruitful, and Wilds told Broadnax that he would be escorted off of the property if he wished to leave. (*Id.*) Broadnax continued to leave, and while approaching the exit door, Broadnax made contact with Large by "brush[ing] up" against Large; Broadnax exclaimed

that Large had "assaulted" him. (*Id.*) Large then twice offered to give Broadnax a ride to his vehicle, to which Broadnax replied, "I'm fucking walking." (*Id.*) Large warned Broadnax about his language. (*Id.* at 4-5). While walking in "the middle of the upper road" on the property, Wilds twice asked Broadnax how he had gotten to the medical center, which Broadnax did not answer. (*Id.* at 5). Wilds then instructed Broadnax to walk toward the medical center because there were no sidewalks leading down to the roadway, and Broadnax complied, but not without additional profanity. (*Id.*) Large again warned Broadnax about his choice of words and threatened Broadnax with arrest for causing a disturbance. (*Id.*) Broadnax responded to Large by using words "that sound[ed] like curse words." (*Id.*) As the officers and Broadnax walked toward the medical center entrance, Broadnax held up his "disruptive behavior card" close to Large's face and asked if Large wanted it. (*Id.*) When Large reached for the card, Broadnax "flipped the paper" toward Large's face, nearly hitting Large. (*Id.*) Large then told Broadnax that he was under arrested for disorderly conduct and reached for Broadnax's right hand. (*Id.*) Broadnax pulled away from Large; however, Wilds was able to place Broadnax up against the building. (*Id.*) Large then used "an under arm restraint" to secure Broadnax before placing handcuffs on him. (*Id.*) While being taken to a holding cell on the property, Broadnax screamed that the officers had "beat" him. (*Id.*)

Large subsequently submitted two misdemeanor criminal complaints in the Magistrate Court of Wayne County, West Virginia. (*Id.* at 1-2). In the first complaint, Large stated that Broadnax "curs[ed]," was "disruptive," and "jerk[ed]" papers from Large's grasp, contrary to W. Va. Code. § 61-6-1b (West Virginia's disorderly conduct statute). (ECF No. 1-1 at 1). In the second complaint, Large asserted that Broadnax failed to provide an officer with information when requested and attempted to pull away from

officers after being informed that he was under arrest, contrary to W. Va. Code. § 61-5-17(a) (West Virginia's obstructing an officer statute). (ECF No. 1-1 at 2). Large also informed Broadnax's federal probation officer, Amy Richmond ("Richmond"), that Broadnax had been arrested. (*Id.* at 5). At the time of the arrest, Broadnax was on federal probation for possessing a knife with a blade length exceeding three inches on the Beckley VAMC property.[4] *See United States v. Broadnax*, No. 5:13-mj-0010, Dkt. No. 18 at 1, 5 (S.D.W.Va. Feb. 21, 2013). After receiving Large's report, Richmond filed a warrant petition in this District alleging that Broadnax had violated the terms of his probation by committing another federal, state, or local crime. *Id.*, Dkt. No. 34 at 1 (Apr. 24, 2014). Richmond wrote in the petition that Broadnax allegedly "chest butted" a Huntington VAMC police officer and "flicked" his "disruptive behavior card" in the face of an officer. *Id.* Richmond requested that Broadnax's probation be revoked.[5] *Id.* at 2.

On March 16, 2015, Broadnax filed an amended complaint alleging that his civil rights were violated by "federal agents" on April 4, 2014. (ECF No. 5 at 2). More specifically, Broadnax claims that Large and Richmond "filed false reports," conspired with each other, and deprived Broadnax of his Fifth Amendment rights. (*Id.* at 4). In addition, Broadnax asserts that Wilds physically assaulted Broadnax on April 4, 2014, and denied Broadnax his "rights granted by the United States Constitution." (*Id.*) Broadnax also claims that Webster "conspired to deprive [Broadnax] of his rights," committed

[4] A special condition of Broadnax's probation prohibited Broadnax from entering the Beckley VAMC property. *United States v. Broadnax*, No. 5:13-mj-0010, Dkt. No. 18 at 6 (S.D.W.Va. Feb. 21, 2013).

[5] At a probation revocation hearing held by Magistrate Judge VanDervort on July 8, 2014, the United States informed Judge VanDervort that "matters pertaining to the revocation of [Broadnax's] probation had been dismissed." *United States v. Broadnax*, No. 5:13-mj-0010, Dkt. No. 47 at 1 (S.D.W.Va. July 8, 2014). Accordingly, Judge VanDervort dismissed the petition to revoke Broadnax's probation. *Id.* In addition, Judge VanDervort granted Broadnax's motion to terminate his term of probation. *Id.*

misconduct, and violated his Fifth Amendment rights. (*Id.*) Finally, Broadnax alleges that the WRJ "failed to provide [Broadnax] with safe housing." (*Id.*) With respect to relief, Broadnax requests "twenty million dollars in damages as a result of the sham arrest and attempted prosecution, etc." (*Id.* at 5).

On June 17, 2015, Broadnax filed a "Statement of Facts," wherein he challenges certain statements contained in the documents created by Large and Richmond that Broadnax attached to his complaint. (ECF No. 26). For example, Broadnax disputes Large's statement in the police report that Wilds informed him that he was free to leave the Huntington VAMC. (*Id.* at 1). Furthermore, Broadnax asserts that Webster advised the officers that he was barred from all VA facilities, which Broadnax insists was a lie. (*Id.*) Broadnax also claims that there is video evidence showing his head being "slammed" into the bricks of the building without provocation. (*Id.* at 2). With respect to Richmond, Broadnax asserts that her "report[s] to the court have been contrary" and that she was the only person to indicate that Broadnax "chest-butted" an officer on April 4, 2014. (*Id.*) Aside from these contentions, the remainder of the "Statement of Facts" discusses facts related to a July 2008 altercation between Broadnax and police officers at the Beckley VAMC, as well as facts concerning his arrest in July 2010 for making terroristic threats against the employees at the Beckley VAMC. (*Id.* at 2-4). At the conclusion of the document, Broadnax requests that the Court order the production of video recordings "in and around" the Huntington VAMC on April 4, 2014, "the name of the VA employee who placed the ban on [Broadnax's] file," and "all phone records especially those belonging to [Large and Richmond]." (*Id.* at 4).

On August 26, 2015, Defendants (except the WRJ) filed a Motion to Dismiss Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 29

at 1). In their accompanying memorandum, Defendants generally assert that the amended complaint should be dismissed as a result of its vagueness and because Defendants are entitled to qualified immunity. (ECF No. 30 at 2, 7-8, 11-12). With respect to Broadnax's claims against Large and Richmond, Defendants contend that Broadnax has failed to plead any factual allegations supporting the legal conclusions contained in the amended complaint that Large and Richmond filed false reports and conspired with each other. (*Id.* at 8). Moreover, Defendants aver that Broadnax has neither explained how his constitutional rights were violated by Large and Richmond nor alleged any injury suffered as a result of Large's and Richmond's actions. (*Id.* at 8-9). As for Broadnax's claims against Webster, Defendants argue that Broadnax has not alleged "who Defendant Webster conspired with or how she conspired with them, how she violated [Broadnax's] rights, what 'Fifth Amendment Right' she violated, what 'misconduct' she allegedly committed, or any alleged injury [Broadnax] suffered as a result of her actions." (*Id.* at 9). In relation to Wilds, Defendants maintain that Broadnax has failed to provide factual support for his legal conclusion that Wilds physically assaulted him. (*Id.* at 10). Defendants also argue that Broadnax neglected to describe any injury resulting from the alleged assault. (*Id.* at 11). As to the United States, Huntington VAMC, and Beckley VAMC, Defendants claim that the amended complaint contains no specific allegations concerning these defendants and that *Bivens*[6] claims are not actionable against the United States, federal agencies, or public officials in their official capacities. (*Id.*) Finally, Defendants argue that they are entitled to qualified immunity because Broadnax cannot establish that any of Defendants violated Broadnax's constitutional rights. (*Id.* at 11-12).

---

[6] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

On September 4, 2015, the undersigned entered an order permitting Broadnax until October 5, 2015, to respond to Defendants' Motion to Dismiss Amended Complaint. (ECF No. 31). The undersigned cautioned Broadnax that a failure to respond may support a conclusion that Defendants' contentions are undisputed and may result in dismissal of the complaint. (*Id.* at 1). To date, Broadnax has not filed a response to Defendants' motion.

## II. Standard of Review

Defendants request dismissal of Broadnax's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. A complaint fails to state a compensable claim when, viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Supreme Court explained the "plausibility" standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While the court is required to accept as true the factual allegations asserted in the complaint, it is not required to accept the legitimacy of "a legal

conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S at 555).

Courts are required to liberally construe *pro se* complaints, like the one filed in this action. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading "to include claims that were never presented," *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

"Matters outside of the pleadings are generally not considered in ruling on a Rule 12 motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). If a court considers matters outside the pleadings, then "the motion must be treated as one for summary judgment," and the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, in considering "whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

## III. Discussion

### A. Broadnax's Claims Against Defendants Large and Richmond

In his original complaint, Broadnax made no mention of Large and Richmond. However, in his amended complaint, Broadnax asserts that both Large and Richmond "filed false reports," conspired with each other (to what end, Broadnax does not say), and deprived Broadnax of his Fifth Amendment rights. (ECF No. 5 at 4). Presumably, Broadnax's claims are brought in the form of a *Bivens* action. In *Bivens*, "the Supreme Court held that 'violation of [the Fourth Amendment] by a federal agent acting under color of his authority gives rise to a cause of action for damages,' despite the absence of any federal statute creating liability."[7] *Cioca v. Rumsfeld*, 720 F.3d 505, 508 (4th Cir. 2013) (quoting *Bivens*, 403 U.S. at 389) (bracketed material in original). In other words, *Bivens* "implied a cause of action for damages against federal agents who allegedly violated the Constitution." *F.D.I.C. v. Meyer*, 510 U.S. 471, 473, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Notwithstanding, Broadnax's claims against Large and Richmond in the amended complaint are plainly deficient. Broadnax's statements sound in legal conclusion, not factual allegation. As Defendants point out, Broadnax merely states that Large and Richmond filed false reports and conspired with each other. Broadnax does not explain what the false reports were, how they related to him, to whom they were made, or

[7] The other possibilities are that Broadnax's claims are brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, which concerns common law tort claims against the United States, or under 42 U.S.C. 1985(3), which creates a cause of action where "two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." However, Broadnax mentions neither statute in his complaint. Moreover, in relation to the FTCA, the only proper party in such an action is the United States. *Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms*, 807 F. Supp. 2d 362, 370 (D. Md. 2011); *see also Sanchez v. McLain*, 867 F. Supp. 2d 813, 816-17 (S.D.W.Va. 2011) (discussing differences between *Bivens* claim and FTCA claim). Furthermore, Broadnax has clearly not alleged the necessary elements of a claim under 42 U.S.C. 1985(3). *See Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (explaining elements of claim).

what injury they caused him. Furthermore, Broadnax utterly neglects to describe the details, goal, or accomplishments of any alleged conspiracy between Large and Richmond, nor does he assert how he was harmed by the conspiracy. Finally, Broadnax's claims that Large and Richmond violated his Fifth Amendment rights contain no substance or explanation. Broadnax's naked accusations against Large and Richmond demonstrate precisely the type of devoid-of-facts pleading that *Twombly* and *Iqbal* prevent. Even construing these claims liberally, Broadnax has not alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Powell v. United States*, No. 5:12-CT-3052-FL, 2012 WL 5395814, at *2 (E.D.N.C. Nov. 5, 2012) ("[C]onclusory allegations of conspiracy are not sufficient to state such a claim."). Accordingly, the undersigned **RECOMMENDS** that Broadnax's claims against Defendants Large and Richmond be **DISMISSED**.

**B. Broadnax's Claims Against Defendant Webster**

In the amended complaint, Broadnax alleges that Webster, who works as a patient advocate at the Huntington VAMC, conspired to violate and violated Broadnax's Fifth Amendment rights. (ECF No. 5 at 4). The only other allegation contained in the amended complaint concerning Webster states that she committed this purported misconduct at the Huntington VAMC. (*Id.*) Again, the undersigned presumes that Broadnax's claims concerning Webster fall under *Bivens*, and like the claims above, these claims lacks facial plausibility. The undersigned agrees with Defendants that Broadnax has failed to specifically allege who Webster conspired with, how she conspired with that person, how Webster violated Broadnax's Fifth Amendment rights, and how Broadnax was injured by any of Webster's "misconduct." It is not enough to simply allege that another person conspired to violate a constitutional right or violated a constitutional right; some facts

must accompany those legal contentions. *See, e.g.*, *Bach v. Ehrler*, No. 4:14-cv-00469, 2015 WL 5679741, at *2 (D. Idaho Sept. 25, 2015). Broadnax has failed to plead sufficient factual allegations to support his claims against Defendant Webster, and therefore, the undersigned **RECOMMENDS** that Broadnax's claims against Defendant Webster be **DISMISSED**.

**C. Broadnax's Claims Against Defendant Wilds**

In his original complaint, Broadnax alleged that officers at the Huntington VAMC attacked him without provocation. (ECF No. 1 at 2). In the amended complaint, Broadnax asserts that Wilds physically assaulted him at the Huntington VAMC on April 4, 2014 and violated his constitutional rights. (ECF No. 5 at 4). However, Broadnax's amended complaint wholly omits any description of the circumstances surrounding the alleged assault, how the assault occurred, what, if any, injuries Broadnax sustained as a result of the alleged assault, and which constitutional rights were violated by Wilds. Instead, Broadnax's claim primarily rests on the legal conclusions that Wilds assaulted him and violated his constitutional rights. As explicated above, conclusory accusations without underlying factual allegations are insufficient to survive a Rule 12(b)(6) motion. *Cf. Turner v. Schultz*, 130 F. Supp. 2d 1216, 1226 (D. Colo. 2001) (dismissing Eighth Amendment claim under 12(b)(6) where plaintiff merely alleged that defendant physically assaulted plaintiff without justification or necessity on a specific date). Accordingly, the undersigned **RECOMMENDS** that Broadnax's claim against Defendant Wilds be **DISMISSED**. Because the sufficiency question is a closer call with respect to Broadnax's claim against Defendant Wilds, the undersigned **RECOMMENDS** that the dismissal be **without prejudice** to Broadnax's right to refile a claim against Defendant Wilds alleging a plausible constitutional claim.

**D. Broadnax's Claims Against Defendants United States, Huntington VAMC, and Beckley VAMC**

Broadnax has named the United States, the Huntington VAMC, and the Beckley VAMC as defendants in this lawsuit. However, Broadnax's complaint and amended complaint contain no specific allegations or claims against any of these defendants. This deficiency alone necessitates dismissal. Nevertheless, dismissal of these claims is appropriate for an additional reason—assuming that Broadnax has brought his claims against these defendants under *Bivens*, they must fail because "*Bivens* claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities." *Goforth v. United States*, No. 1:09-0003, 2015 WL 4878381, at *2 (S.D.W.Va. Aug. 14, 2015); *Batiste v. Fed. Bureau of Prisons*, No. 5:13-cv-13565, 2013 WL 6589878, at *6 (S.D.W.Va. Dec. 16, 2013); *see also Meyer*, 510 U.S. at 473, 484-86 (explaining that logic of *Bivens* does not extend to claims against federal agencies and foreclosing such a claim). Indeed, other federal courts have recognized that *Bivens* claims against the United States Veterans Administration or a Veterans Administration Medical Center are precluded by the doctrine of sovereign immunity. *See Daly-Murphy v. Winston*, 837 F.2d 348, 356 (9th Cir. 1987) (no *Bivens* action against Veterans Administration); *Freeman v. United States*, No. 13-cv-02421, 2014 WL 1117619, at *7 (N.D. Cal. Mar. 19, 2014) (no *Bivens* action against VAMC); *O'Neal v. Georgia*, No. CV 309-047, 2010 WL 1658593, at *2 (S.D. Ga. Mar. 18, 2010) (same), *report and recommendation adopted by* 2010 WL 1658590 (S.D. Ga. Apr. 21, 2010); *Gilchrist v. S.C. Veterans Admin.*, No. 3:07-cv-02620, 2007 WL 3286781, at *7 n.9 (D.S.C. Nov. 6, 2007) (no *Bivens* action against Veterans Administration or VAMC). Moreover, insofar as Broadnax's undescribed claim against the United States might fall under the FTCA,

Broadnax has not alleged that he has exhausted his administrative remedies for that claim. *See* 28 U.S.C.A. § 2675(a) (requiring presentation of claim to appropriate federal agency before bringing lawsuit against United States); *McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (recognizing that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). For these reasons, the undersigned **RECOMMENDS** that Broadnax's claims against the United States, the Huntington VAMC, and the Beckley VAMC be **DISMISSED**.

**E. Broadnax's Claims Against the WRJ**

Finally, the undersigned addresses Broadnax's claims against the WRJ. In his original complaint, Broadnax asserted that negligent employees at the WRJ placed an intoxicated and violent inmate in his cell, which caused him "suffering." (ECF No. 1 at 2). In his amended complaint, Broadnax claims that the WRJ failed to provide him with "safe housing." (ECF No. 5 at 4). The undersigned presumes that Broadnax's claims against the WRJ are brought under 42 U.S.C. § 1983, which establishes a private cause of action for constitutional violations committed by persons acting under color of state law. Although the WRJ has not answered or otherwise responded to Broadnax's amended complaint, the undersigned *sua sponte* considers Broadnax's claims against the jail because they present a jurisdictional issue under the Eleventh Amendment. *See Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997) ("[B]ecause of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*."); *Carroll v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 3:14-17012, 2015 WL 1395886, at *2 (S.D.W.Va. Mar. 25, 2015) (addressing Eleventh Amendment immunity *sua sponte* because of its "jurisdictional nature"); *Stanley v. Gray*, No. 2:06CV00031,

2007 WL 445366, at *7 (W.D. Va. Feb. 11, 2007) (recognizing court's "inherent power to dismiss sua sponte claims against [] defendants for which relief cannot be granted.").

The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the United States Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)) (markings omitted). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

As a threshold issue, the undersigned must determine whether the WRJ is an arm of the State protected by Eleventh Amendment immunity. *See McGraw*, 125 F.3d at 227. In a number of past decisions, this Court has answered in the affirmative. *Kinder v. PrimeCare Med., Inc.*, No. 3:13-31596, 2015 WL 1276748, at *2 (S.D.W.Va. Mar. 19, 2015)

(dismissing the WRJ from § 1983 suit on Eleventh Amendment grounds); *Skaggs v. W. Reg'l Jail*, No. 3:13-3293, 2014 WL 66645, at *1, *4 (S.D.W.Va. Jan. 8, 2014) (dismissing the WRJ from § 1983 suit and adopting finding that the WRJ is arm of the State for Eleventh Amendment purposes); *Lewis v. Western Reg'l Jail*, No. 3:11-cv-01016, 2012 WL 3670393, at *5 (S.D.W.Va. July 24, 2012) (recognizing that "the WRJ is not a person subject to suit under § 1983"), *report and recommendation adopted by* 2012 WL 3726874 (S.D.W.Va. Aug. 27, 2012)[8]; *see also Dement v. Summers Cnty. Courthouse*, No. 5:13-cv-08899, 2015 WL 461560, at *3 (S.D.W.Va. Feb. 3, 2015) (finding that Southern Regional Jail was not subject to § 1983 suit). Thus, the WRJ is guaranteed immunity unless an exception to the Eleventh Amendment applies.

Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir.2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir.1988)) (markings omitted). Historically, the State of West Virginia has not waived its

---

[8] In *Harter v. Vernon*, the Fourth Circuit discussed the interplay between personhood and the Eleventh Amendment:

> If an official or entity is not immune from suit under the Eleventh Amendment that official or entity is a "person" subject to suit under § 1983.... The opposite is also true, if the Eleventh Amendment applies, the entity or official is not a person under § 1983.... Therefore, federal courts should approach these issues solely under the rubric of the Eleventh Amendment, and should not consider an argument of "personhood" under § 1983.

101 F.3d 334, 338 n.1 (4th Cir. 1996).

sovereign immunity in similar suits, and there is no indication that the State would do so now. *See Kinder*, 2015 WL 1276748, at *7; *Skaggs*, 2014 WL 66645, at *5; *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W.Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W.Va. June 27, 2013); *Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W.Va. 1992). Consequently, the waiver exception would not apply to this suit.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)). In *Will*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. 491 U.S. at 65. Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government ... unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L .Ed.2d 171 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 601 (1991) (quoting *Will*, 491 U.S. at 65). Thus, the law is well-settled that Congress has not abrogated Eleventh

Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004) (citing *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W.Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (citations omitted). Because the WRJ is not a state officer, but rather a state entity or agency, the third exception to Eleventh Amendment immunity is inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that lawsuit must name state official as defendant, not state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208

(9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction").

In sum, since none of the three Eleventh Amendment immunity exceptions apply, the WRJ is shielded by the Eleventh Amendment from Broadnax's § 1983 claims. Accordingly, the undersigned **RECOMMENDS** that Broadnax's claims against the WRJ be **DISMISSED**.

## IV. Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Defendants' Motion to Dismiss Amended Complaint, (ECF No. 29), be **GRANTED**, and Broadnax's amended complaint, (ECF No. 5), be **DISMISSED, with prejudice**, *with the exception of Broadnax's claim against Defendant Wilds*, which should be **DISMISSED, *without prejudice.***

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, the Defendants, the West Virginia Regional Jail & Correctional Facility Authority, and counsel of record.

**FILED:** November 20, 2015

Cheryl A. Eifert
United States Magistrate Judge